UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
PAN ALBANIAN FEDERATION OF AMERICA,     :
VATRA (THE HEARTH), INC,

                      Plaintiff,     :

        -against-     :      24-cv-01610 (ALC)

                                 :

AUGUSTIN MIRAKAJ AND VALENTINE LUMAJ,     :      **OPINION AND ORDER**

                Defendants.     :
------------------------------------------------------------------- X

**ANDREW L. CARTER, JR., District Judge:**

      Plaintiff The Pan-Albanian Federation of America Vatra (The Hearth) Inc. ("VATRA" or "Plaintiff") brings this action against Defendants Augustin Mirakaj and Valentine Lumaj (collectively, "Defendants") sounding in trademark infringement, defamation, and conspiracy claims. Plaintiff's claims arise from allegations of Defendants' unlawful use of Plaintiff's mark and, more generally, from Defendants' alleged efforts to undermine Plaintiff's legitimacy.

      Plaintiff filed a motion for a temporary restraining order and preliminary injunction to, among other things, enjoin Defendants from using Plaintiff's mark. The Court denied the temporary restraining order and ordered Defendants to show cause as to why a preliminary injunction should not be granted in this case. Following the Parties' briefing, a preliminary injunction hearing, and a subsequent telephonic hearing, the Court hereby **DENIES** Plaintiff's motion for a preliminary injunction.

**BACKGROUND**

## I.     Factual Background

Plaintiff asserts subject matter jurisdiction in federal court on trademark infringement grounds.  But this is not a typical trademark case:  this story is more about an acrimonious falling out between an organization and one of its branches.

Plaintiff is a non-profit organization based in Boston that, for more than 100 years, has worked to promote and preserve Albanian culture and history, as well as to support Albanians and Albanian-Americans.  ECF No. 33 ("Am. Compl.") ¶ 10.  Since its founding, Plaintiff has used a seal denoting the organization's name in circular lettering and containing a hearth in the center:



*Id*. ¶¶ 14–15, 20.  Plaintiff contends that the seal is a mark that has been made commercially valuable due to Plaintiff's widespread advocacy efforts, its global reputation, and robust organizational structure.  *Id.* ¶¶ 15–19.

Plaintiff claims that the mark is distinctive because it has expended substantial effort to protect the mark, the mark is used in commerce, and the mark's use is attached to high-quality goods and services.  *Id.* ¶¶ 29–32.  In addition, Plaintiff claims that the unsolicited widespread use of the mark "garners [it] strong common law rights and statutory protection under the Lanham Act for its name and its VATRA mark."  *Id.* ¶¶ 35–37.  Additionally, the mark is filed

with—but not yet approved by—the United States Trademark and Patent Office (USPTO), which Plaintiff argues "garner[s] it ownership of extensive common law trademark rights in and protection of the mark." *Id.* ¶ 38; U.S. Trademark Application Serial No. 90187864 (filed Sept. 17, 2020).

Plaintiff "has several local branches throughout the United States with its membership spanning across the transatlantic into Albania and its surrounding region." Plaintiff's Memorandum of Law in Support of Its Temporary Restraining Order and Preliminary Injunction Motion (ECF No. 48-1) ("Pl.'s Mem.") at 2. VATRA's "Board organizes the branches and decides their inclusion and removal from the organization" according to Plaintiff's constitution and bylaws, which were amended in 2022. *Id.* at 3. Under the 2022 amendments, each branch must also "enter into a written agreement with VATRA regarding, among other things, a license to use the VATRA mark, before the branch's continued recognition as a member." *Id.* Plaintiff's constitution and bylaws also permit the removal of any VATRA member "for violating the By-Laws, for working against VATRA's spirit, for behavior that harms VATRA's image, and/or if they drive away members from the organization." *Id.* at 4.

At the center of this dispute is the VATRA Manhattan Branch, which Defendant Mirakaj states was "duly established" in 2020 and was "officially accepted" by VATRA as early as July 11, 2021. *See* Declaration of Augustin Mirakaj (ECF No. 54) ("Mirakaj Decl.") ¶¶ 1–2, 4. The VATRA Manhattan Branch uses a seal denoting the branch's name in circular lettering and containing a hearth in the center:



*Id.* at 15.

Plaintiff characterizes the branch as "[a] small group of persons . . . [that] after numerous requests [from Plaintiff], refused to sign the [Branch] Agreement with VATRA, regarding, among other things, the license to use the VATRA mark, failed to pay their membership dues, and failed to have fifteen (15) or [sic] members, which ultimately lead [sic] to their exclusion from VATRA" as early as November 2023. *See* Pl.'s Mem. at 4; Ex. B to Plaintiff's Memorandum in Support of Its Motion for Preliminary Injunction (ECF No. 49-1) ("VATRA Bylaws") ¶ 42; Ex. D to Affidavit of Elmi Berisha in Support of Plaintiff's Motion for Preliminary Injunction (ECF No. 49-1) ("Berisha Aff.") at 1–2. Although Plaintiff contends that the VATRA Manhattan Branch failed to sign the branch agreement, Defendant Mirakaj nonetheless asserts that "[n]o revocation of [the] license has been made" and that the VATRA Manhattan Branch continues to be a licensed VATRA branch. Defendant Mirakaj's Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction (ECF No. 55) ("Mirakaj Opp.") at 5; Mirakaj Decl. ¶ 6.

Much of the infringement evidence put forth by Plaintiff consists of screenshots from a Facebook page seemingly associated with the VATRA Manhattan Branch. *See generally* Ex. A to Plaintiff's Reply in Support of Its Motion for Preliminary Injunction (ECF No. 58-1) ("Facebook Posts"). The VATRA Manhattan Branch seal appears on the page's header, as the page's profile picture, and as letterhead on press statements posted on the page:



*Id.* at 3, 4, 19, 38. Elsewhere on the page, the VATRA mark appears partially or in full:





*Id.* at 9, 13, 24, 34.  Plaintiff also cites content throughout the page that allegedly disparages VATRA's leadership.  *See* Pl.'s Mem. at 5.

Defendant Mirakaj states that he is an officer of the licensed VATRA Manhattan Branch. Mirakaj Decl. ¶¶ 1, 6.  Although Defendant Mirakaj does not provide a particular title, Plaintiff submits evidence that Defendant Mirakaj holds himself out as the president of the VATRA Manhattan Branch.  Pl.'s Mem. at 17.  Defendant Mirakaj nonetheless disclaims any control over the branch's Facebook page (noting that anyone can post content on the page), though separately

he has criticized VATRA's "fake leadership."  Mirakaj Decl. ¶¶ 7–14.  There is evidence on the record that VATRA's board voted to expel Mirakaj as a member of VATRA in June 2023.  ECF No. 62 ("Joint Status Rep.") at 1.  Defendant Mirakaj does not dispute that the vote for his removal took place, but he argues that Plaintiff failed to follow the removal procedures outlined in the VATRA bylaws, so he continues to be an officer of the VATRA Manhattan Branch.  *Id.* at 1–2.  Plaintiff in turn alleges that Defendant Mirakaj has retaliated against Plaintiff by, among other things, appearing at an "unauthorized VATRA meeting[,]" making false and defamatory statements about VATRA's leadership, and protesting at VATRA's headquarters.  Pl.'s Mem. at 4–5.

Defendant Lumaj states that he is a former officer of the VATRA Michigan Branch, a former VATRA Assembly chairman, and a former member of the VATRA Council.  Ex. 2 to Affidavit of Christopher J. White in Opposition to Plaintiff's Motion for Preliminary Injunction (ECF No. 56) ("Lumaj Aff.") ¶¶ 1–2.  Like Defendant Mirakaj, he submits criticisms of VATRA's leadership.  *Id.* ¶¶ 7–11.  Defendant Lumaj also notes that he has never been a member of the VATRA Manhattan Branch and has no control over the branch's website.  *Id.* ¶ 5.  Plaintiff contends, however, that Defendant Lumaj has conspired with Defendant Mirakaj in efforts to overthrow the VATRA board, including by appearing at unauthorized VATRA events with Defendant Mirakaj and allegedly "proclaiming on the Defendant Mirakaj's Manhattan Branch Facebook page that the leader of VATRA is illegal and illegitimate."  Pl.'s Mem. at 5.

Plaintiff issued cease-and-desist letters to Defendants Lumaj and Mirakaj (on June 1, 2023 and July 6, 2023 respectively) demanding them to "immediately refrain from making defamatory statements and posting photos on social media about the organization and its members and officers, engaging in harassment against officers and members of the organization,

and violating trademark, service mark, and copyright laws under which VATRA is protected."
*Id.* at 5.  The letters also "disbanded [Defendants] as members of VATRA, effective
immediately."  *Id.*  Plaintiff claims that Defendants ignored their cease-and-desist letters and
have now turned to making false statements about Plaintiff to third parties to ruin their business
relationships with Plaintiff.  *Id.* at 6.

## II.    Procedural Background

On November 25, 2023, Plaintiff initiated this action against Defendant Mirakaj in the
U.S. District Court for the District of Massachusetts.  ECF No. 1.  On December 5, 2023, in that
district, Plaintiff sought a motion for a temporary restraining order and preliminary injunction, as
well as a motion for a short order of notice to be heard on its motion.  ECF Nos. 5, 11.  On
February 8, 2024, the Parties orally moved to transfer this case to the U.S. District Court for the
Southern District of New York and the case was transferred to this district that same day.  ECF
Nos. 15–17.  On July 31, 2024, the Court denied Plaintiff's motions for injunctive relief and for a
short order of notice to be heard.  ECF No. 46.  The Court also ordered Plaintiff to file updated
motions to include Defendant Lumaj who had since been added to the Amended Complaint.  *Id.*

On August 30, 2024, Plaintiff filed a new motion for a temporary restraining order and
preliminary injunction which requested that the Court enjoin:  "(i) both Defendants from using,
posting or transmitting the VATRA trademark; (ii) Defendant Mirakaj from holding himself out
as President of the Manhattan Branch of VATRA and/or using the title of President of the
Manhattan Branch of VATRA; (iii) both Defendants from using any affiliation(s) with VATRA
and/or holding themselves out as members of VATRA; (iv) Defendant Mirakaj from holding
meetings or assembling under the name of the Manhattan Branch of VATRA and/or any
body/branch of VATRA; (v) both Defendants to immediately return of all seals, books, receipt

forms, all record list of members, and any other property related to VATRA in Defendants' possession or in the possession of the Manhattan Branch of VATRA; (vi) both Defendants from spreading false statement [sic] (or statement [sic] that cannot proven to be true) about VATRA or any of its members; and (vii) both Defendants from interfering with the operation of VATRA and harassing VATRA and its members." Pl.'s Mem. at 20–21. Additionally, "VATRA requests that the Court order the Defendants (i) to remove and preserve all false statement (or statement they [sic] cannot be proven true) made about VATRA and any of its members published on social media or elsewhere; and (ii) remove and preserve the Manhattan Branch Facebook." *Id.* at 21.

On September 11, 2024, the Court denied the temporary restraining order and ordered Defendants to show cause as to why an order should not be issued granting Plaintiff's requested preliminary injunction. ECF No. 50. On October 10, 2024, Defendants filed their opposition briefs to the preliminary injunction. ECF Nos. 54–58. On October 14, 2024, Plaintiff filed its reply. ECF No. 58.

On October 16, 2024, the Court held a preliminary injunction hearing but declined to rule on Plaintiff's motion; instead, it ordered the Parties to submit documents and information related to the VATRA board's vote to remove Defendant Mirakaj from VATRA. ECF No. 59. On November 12, 2024, the Parties submitted a joint status report containing, among other things, additional clarity on the board's vote. Joint Status Rep. at 1–2. On December 10, 2024, the Court held a telephonic hearing to discuss the joint status report. *See* 12/10/2024 Minute Entry.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Where the plaintiff has "an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005).

"A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).

In the Second Circuit, when seeking an injunction that is "mandatory" (that is, one that changes the status quo), the moving party is held to a heightened standard, requiring a demonstration of a "clear" or "substantial" likelihood of success on the merits and a "strong showing" of irreparable harm. *See New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015).

## DISCUSSION

Plaintiff alleges that Defendants have infringed on its trademark through their use of the VATRA mark and a variation of it—the VATRA Manhattan Branch seal—without Plaintiff's authorization. As the Court lays out below, the correct analysis for assessing the merits of an infringement case is the likelihood of confusion between the marks. Defendants argue that they

do not use the VATRA mark, but even if they did, its use would be licensed because the branch is sanctioned by VATRA. Therefore, the Court's likelihood of confusion analysis also considers whether Defendants' alleged use is licensed.

But as the Court forewarned, this is not a typical trademark case. The alleged infringement of Plaintiff's mark is just one piece of the broader intraorganizational dispute between the Parties. Indeed, Plaintiff seeks injunctive relief related to its trademark and defamation claims against Defendants, but the Parties only address the likelihood of success on the merits of Plaintiff's trademark claims in their briefing. As a result, the Court is left with a minimal basis for assessing the likelihood of success of Plaintiff's defamation or conspiracy claims.[1]

Before turning to the analysis, the Court notes that it cannot identify any evidence on the record of Defendant Lumaj's use of the mark. Therefore, the Court will only consider the likelihood of success of Plaintiff's infringement claims and irreparable harm against Defendant Mirakaj. Moreover, because the requested relief would require Defendant Mirakaj to act affirmatively, Plaintiff is held to the heightened preliminary injunction standard and must show a "clear" or "substantial" likelihood of success on the merits and a "strong showing" of irreparable harm. *Id.* As explained below, the Court finds that Plaintiff does not meet its burden.

I.      **Plaintiff Has Not Demonstrated a Clear or Substantial Likelihood of Success on the Merits**

---

[1] Even if Plaintiff had argued the likelihood of success on the merits as to its defamation claims, it would face an uphill battle given the "the First Amendment's heavy presumption against prior restraints." *See Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001). In the Second Circuit, "absent extraordinary circumstances, injunctions should not ordinarily issue in defamation cases." *Id.* (citing *Am. Malting Co. v. Keitel*, 209 F. 351, 353 (2d Cir. 1913) ("Equity will not restrain by injunction the threatened publication of a libel, as such, however great the injury to property may be. This is the universal rule in the United States . . . .")).

"Under the Lanham Act, a plaintiff alleging trademark infringement must demonstrate that (1) 'it has a valid mark that is entitled to protection' and that (2) the defendant's 'actions are likely to cause confusion with [that] mark.'" *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (quoting *The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996)). Further, when a mark is protected under the Lanham Act, "both the likelihood of success on the merits and the potential for irreparable harm in the absence of preliminary relief may be demonstrated by a showing that a significant number of consumers are likely to be misled or confused as to the source of the products in question." *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 119 (2d Cir. 2022) (quoting *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.,* 973 F.2d 1033, 1038 (2d Cir. 1992)).

The likelihood of confusion between Plaintiff's and Defendants' marks can be determined by applying the test in *Polaroid* which weighs the: "(1) strength of [Plaintiff's] trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market." *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). "No single factor is dispositive, nor is a court limited to consideration of only these factors." *1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 247–48 (2d Cir. 2024) (internal quotation marks omitted) (quoting *Brennan's, Inc. v. Brennan's Rest.*, LLC, 360 F.3d 125, 130 (2d Cir. 2004)).

1.  <u>The Strength and Validity of the Mark</u>

The analysis for the first prong of an infringement claim—whether a trademark is valid and entitled to protection—overlaps with the analysis used to assess the first *Polaroid* factor— the strength of Plaintiff's mark—so the Court discusses in tandem the strength and validity of Plaintiff's mark. *See Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir. 1995) ("A court's inquiry regarding the strength of a mark often parallels the inquiry concerning the mark's validity, inasmuch as the strength or distinctiveness of a mark determines both the ease with which it may be established as a valid trademark and the degree of protection it will be accorded.") (citations and internal quotation marks omitted).

"The strength of a particular mark is measured by the degree to which it indicates source or origin of the product." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001) (internal citations omitted). A mark's strength is determined by its inherent distinctiveness and the distinctiveness it has acquired in the marketplace. *See Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 743–44 (2d Cir. 1998). "Registered marks are presumptively distinctive, although this can be overcome by showing that a registered mark is generic or is descriptive without secondary meaning." *Juicy Couture, Inc. v. Bella Int'l Ltd.*, 930 F. Supp. 2d 489, 499 (S.D.N.Y. 2013) (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2d Cir. 1976); *Giggle, Inc. v. netFocal, Inc.*, 856 F.Supp.2d 625, 629–30 (S.D.N.Y. 2012)). Courts consider several other, non-exhaustive factors—including unsolicited media coverage of the mark and the length and exclusivity of the mark's use—to determine whether a mark has acquired distinctiveness. *Juicy Couture*, 930 F. Supp. 2d at 499 (citing *Thompson Med. Co., Inc. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir. 1985))

Plaintiff points to its extensive and continuous use of the VATRA mark—both within the organization and in its external publications—and reports other widespread unsolicited use. Am. Compl. ¶¶ 21–34. Plaintiff has also filed the mark with the USPTO. *Id.* ¶ 38; U.S. Trademark Application Serial No. 90187864 (filed Sept. 17, 2020). Defendant Mirakaj failed to dispute the strength of Plaintiff's mark, so the Court finds that Plaintiff's mark is strong and sufficiently distinctive such that it is entitled to protection.

        2.  <u>The Similarity of the Marks</u>

"In assessing similarity, courts look to the overall impression created by the logos and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 386 (2d Cir. 2005) (internal quotation marks omitted) (quoting *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993)). A side-by-side comparison of Plaintiff's mark and the VATRA Manhattan Branch seal can be used to assess their similarity:



*See* Pl.'s Mem. at 15. Plaintiff points to the common use of a seal displaying a hearth in the center underneath the wordmark "VATRA." *Id.* at 15–16. Defendant Mirakaj disputes that he uses Plaintiff's mark but nonetheless argues that the VATRA Manhattan Branch is "a legitimately sanctioned branch with licensing rights to use the mark[.]" Mirakaj Opp. at 5. He

does not dispute the similarity between the VATRA mark and the VATRA Manhattan Branch seal. The Court concludes that the seals are naturally similar given that the VATRA Manhattan Branch was created as a VATRA branch. The Court concludes that the similarity factor favors Plaintiff.

### 3. The Competitive Proximity of the Products

To gauge whether "products" are proximate in the marketplace, Courts examine "the nature of the products themselves and the structure of the relevant market," including "the manner in which the products are advertised, and the channels through which the goods are sold." *Cadbury Beverages v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir. 1996) (citing *Vitarroz v. Borden, Inc.*, 644 F.2d 960, 967 (2d Cir. 1981)). Plaintiff argues the services offered by itself and Defendant Mirakaj are identical in that "all parties are associated in some way with offering membership in VATRA and the promotion of Albanians and American Albanians globally." Pl.'s Mem. at 16. Defendant Mirakaj does not dispute proximity, so the Court finds that this factor favors Plaintiff.

### 4. Whether Plaintiff Will Bridge the Gap

"The term 'bridging the gap' is used to describe the senior user's interest in preserving avenues of expansion and entering into related fields." *NYC Triathlon LLC v. NYC Triathlon Club, Inc.*, 704 F.Supp.2d 305, 338 (S.D.N.Y. 2010) (quoting *CLASS Promotions, Inc. v. DS Magazines, Inc.*, 753 F.2d 14, 18 (2d Cir. 1985)). The Parties did not provide evidence of any gap to be bridged, therefore the Court concludes that this factor is neutral.

### 5. Actual Confusion

"It is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a

likelihood of confusion as to source." *Lois Sportswear, U.S.A. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir.1986); *see also Pfizer Inc. v. Sachs*, 652 F.Supp.2d 512, 523 (S.D.N.Y. 2009). To attempt to show actual confusion, Plaintiff alleges that Defendant Mirakaj "continuously advertises meetings at VATRA's main office which numerous persons have attended, has appeared on news programs as the President of VATRA Manhattan's branch, makes press statements as to VATRA's business and official meetings, and publishes 'official' VATRA Manhattan Branch correspondence." *See* Pl.'s Mem. at 17. Although this might be evidence of Defendant Mirakaj improperly holding himself out as the VATRA Manhattan Branch president, it is not evidence that any consumer has in fact been confused by the marks. The Court finds no evidence of actual confusion and concludes that this factor is neutral.

6. Bad Faith

The "inquiry into willfulness or bad faith 'considers whether defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and on any confusion between his and the senior user's product.'" *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*, 440 F.Supp.2d 249, 278 (S.D.N.Y. 2006) (quoting *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 460 (2d Cir. 2004)). Though Plaintiff certainly alleges "egregious and damaging conduct" by Defendants, the Parties did not brief bad faith in the context of the likelihood of confusion test. *See* Pl.'s Mem. at 6. The Court is unable to make a finding on this issue and concludes it is neutral.

7. Quality of the Products

The Court must "consider[ ] whether the senior user's reputation could be 'tarnished by [the] inferior merchandise of the junior user.'" *Cadbury Beverages*, 73 F.3d at 483 (2d Cir. 1996) (quoting *Scarves by Vera, Inc. v. Todo Imps. Ltd.*, 544 F.2d 1167, 1172 (2d Cir. 1976)).

This factor "goes more to the harm that confusion can cause the plaintiff's mark and reputation than to the likelihood of confusion." *Virgin Enters., Ltd. V. Nawab*, 335 F.3d 141, 152 (2d Cir. 2003). The Parties did not brief this issue in the context of the likelihood of confusion between the marks, so the Court is unable to make a finding and concludes that it is neutral.

        8.   <u>Consumers' Sophistication</u>

"The final *Polaroid* factor, the sophistication of the relevant consumer group, is grounded on the belief that unsophisticated consumers aggravate the likelihood of confusion." *Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F. Supp. 279, 299–300 (S.D.N.Y. 1997) (citing *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 79 (2d Cir. 1988)). The lack of evidence on the record about the relevant consumers similarly affords this factor no weight in the Court's analysis, so the Court concludes that this factor is neutral.

        9.   <u>Licensing of the VATRA Mark</u>

The Parties briefed some of the *Polaroid* likelihood of confusion factors, and the Court concludes that only three factors militate toward Plaintiff's likelihood of success while the rest are neutral. In a typical case, this alone would likely not constitute a clear and substantial likelihood of success on the merits. But the Court now considers the looming issue in this action—whether an ex-licensee is entitled to any holdover license of Plaintiff's marks—and the extent to which unlicensed use alters the likelihood of confusion.

The Second Circuit has held that "in a licensor/licensee case the reasons for issuing a preliminary injunction for trademark infringement are more compelling than in the ordinary case." *Church of Scientology Intern. v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 42 (2d Cir. 1986) (reversing the district court's denial of a preliminary injunction against a former licensee and ordering an injunction upon a conclusion that "[w]hen in the licensing

context unlawful use and consumer confusion have been demonstrated, a finding of irreparable

harm is automatic").  In such cases, "[t]here is a compelling need for [preliminary] injunctive

relief especially when the case involves a former licensee because, after a license has been

revoked, there is an increased danger that consumers will be confused and believe that the former

licensee is still an authorized representative of the trademark holder."  *Sunward Electronics, Inc.

v. McDonald*, 362 F.3d 17, 25 (2d Cir. 2004).

The Court recognizes that one of the most dispositive issues in this case is whether the

branch and Defendants have properly been excommunicated from VATRA such that their

alleged use of Plaintiff's mark constitutes infringement.  Plaintiff has provided evidence that the

2022 VATRA bylaws require branches to, among other things, sign a branch agreement to

qualify as a VATRA branch.  *See* VATRA Bylaws ¶ 42.  The branch agreement includes a

section on VATRA's intellectual property rights, which in turn sets out that the undersigned

branch enjoys a "limited, revocable, non-exclusive license" to use the VATRA mark.  *See* Ex. C

to Plaintiff's Memorandum in Support of Its Motion for Preliminary Injunction (ECF No. 49-1)

("Branch Agreement") § 2.1.  VATRA branches also "shall not use marks that are parts of, or

confusingly similar to, the VATRA Mark."  *Id.* § 2.4.  Plaintiff contends that the VATRA

Manhattan Branch was excluded from VATRA for failure to sign this agreement.  Pl. Mem. at 4.

Plaintiff further points to evidence that the VATRA Manhattan Branch was given notice in

November 2023 of its noncompliance with the bylaws and was offered an opportunity to cure by

signing the branch agreement.  *See* Ex. C to Plaintiff's Memorandum in Support of Its Motion

for Preliminary Injunction (ECF No. 49-1) ("Letter to Viktor Worfi").

In turn, Defendant Mirakaj alleges that VATRA Manhattan Branch "is a legitimately

sanctioned branch with licensing rights to use the mark[.]".Mirakaj Opp. at 5.  He also contends

that Plaintiff "did not follow the procedures outlined in their own bylaws to expel the VATRA Manhattan Branch and/or [Defendant Mirakaj]."  Joint Status Rep. 1–2; *see also* VATRA Bylaws ¶ 49 ("When a branch violates the Bylaws, does not comply with the Board and its decisions, or those of the Council, the Board may request that the Council begins the removal procedure.  The Board, after conducting a set of verifications, gives the Branch Board one month to make the necessary amends, in accordance with the nature of the violation.  If the branch does not make amends, the Board proposes to the Council its removal from the List.  The Board submits in writing the reasons for this administrative measure.  The branch is considered expelled when this is agreed by two-thirds of the Council.").

With respect to his status as a VATRA member, Defendant Mirakaj concedes that the VATRA board voted for his removal, but disputes that due process was afforded to him.  *See* Joint Status Rep. at 1–2.  Plaintiff, however, put forth evidence that VATRA's leadership issued cease-and-desist letters to Defendants Lumaj and Mirakaj that advised them that they had been disbanded from VATRA.  Pl.'s Mem. at 5.

Having reviewed the evidence on this issue, the Court finds that Plaintiff has put forth some evidence of nonlicensed use of its mark, but concludes that the evidence is not strong enough to affect the Court's earlier determination on the likelihood of confusion.  This drives the Court to conclude that Plaintiff has not met its burden of showing a clear or substantial likelihood of success on the merits.

## II.    Plaintiff Has Not Demonstrated a Strong Showing of Irreparable Harm

For a motion for a preliminary injunction to be granted, Plaintiff must establish that, absent an injunction, it would likely suffer "an injury that is neither remote nor speculative, but actual and imminent and one that cannot be remedied if a court waits until the end of trial to

resolve the harm." *Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005); see also JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) ("Likelihood sets, of course, a higher standard than 'possibility.'"). Irreparable harm manifests in trademark cases "when the party seeking the injunction shows that it will lose control over the reputation of its trademark pending trial[.]" *Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.*, 754 F.2d 91, 95 (2d Cir. 1985).

Under the Trademark Modernization Act of 2020, "a plaintiff seeking a preliminary injunction is entitled to a rebuttable presumption of irreparable harm upon a court's finding a likelihood of success on the merits." *Two Hands IP LLC v. Two Hands Am.*, Inc., 563 F. Supp. 3d 290, 300 (S.D.N.Y. 2021); 15 U.S.C. § 1116(a). However, the Trademark Modernization Act is inapplicable here given the Court's finding that Plaintiff did not demonstrate a likelihood of success on the merits. *See Engine Cap. Mgmt., LP v. Engine No. 1 GP LLC*, No. 21-CV-149, 2021 WL 1372658, at *12 (S.D.N.Y. Apr. 12, 2021).

Moreover, mere assertions that confusion will cause irreparable injury are insufficient. *U.S. Polo Ass'n., Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011). Additionally, "conclusory statements of loss of reputation and goodwill constitute an insufficient basis for a finding of irreparable harm." *Singas Famous Pizza Brands Corp. v. N.Y. Advert. LLC*, No. 10-CV-8976, 2011 WL 497978, at *6 (S.D.N.Y. Feb. 10, 2011), *aff'd*, 468 F. App'x 43 (2d Cir. 2012). Under a heightened preliminary injunction standard, Plaintiff must also demonstrate a strong showing of irreparable harm. *See New York ex rel. Schneiderman*, 787 F.3d at 650.

In its briefing, Plaintiff mostly points to the potential for irreparable injury to its reputation caused by Defendant Mirakaj's conduct, specifically his: (1) holding himself out as

the president of the VATRA Manhattan Branch; (2) giving notice of meetings at the VATRA main house; (3) interrupting VATRA's official business; and (4) inviting media to the VATRA annual conference. Pl.'s Mem. at 19–20. The Court does not aim to minimize Defendant Mirakaj's alleged conduct, but it strains to see how Defendants will "devastate VATRA's endeavors" absent injunctive relief, especially when Plaintiff makes conclusory statements about the effect of this conduct on its reputation. *See id.* at 21. In fact, Plaintiff put forth evidence of a VATRA meeting with "strong attendance" that was held after the start of this litigation and in which "members of the various VATRA branches, travelled to Boston, Massachusetts from various states to attend a required meeting and promote VATRA's ideals[.]" *Id.* at 7. Consequently, the Court concludes that Plaintiff has not met its burden of demonstrating a strong showing of irreparable harm pending trial.

### III.    The Public Interest and a Balance of the Equities Do Not Favor Plaintiff

"Under the last injunction factor, [the Court] must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief, as well as the public consequences in employing the extraordinary remedy of injunction." *Yang v. Kosinski*, 960 F.3d 119, 135–36 (2d Cir. 2020). Put simply, a balancing of the equities amounts to "the hardship imposed on one party outweigh[ing] the benefit to the other." *Ligon v. City of New York*, 925 F. Supp. 2d 478, 540 (S.D.N.Y. 2013).

Because Plaintiff has not clearly demonstrated a likelihood of success on the merits or that it will suffer irreparable harm absent injunctive relief, the balance of the equities does not tip in Plaintiff's favor. Additionally, the consequences of granting or denying the relief are limited to Plaintiff, Defendants, and other VATRA members and branches. As a result, Plaintiff also

fails to show that a preliminary injunction serves the public interest. *See We The Patriots USA, Inc. v. Hochul,* 17 F.4th 266, 296 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021).

Accordingly, Plaintiff has not met its burden of proof as to the clear and substantial likelihood of success on the merits of its claim, demonstrated strong irreparable harm, or shown that the public interest weighs in favor of granting injunctive relief.

## CONCLUSION

For the reasons above, the Court **DENIES** Plaintiff's request for preliminary injunction.


**SO ORDERED.**


**Dated:**     **New York, New York**
         **February 27, 2025**

_____
     **ANDREW L. CARTER, JR.**
     **United States District Judge**